Good afternoon, Your Honors. My name is Martin Anderson. I represent plaintiff and appellant David Ortega. I wanted to address, I can tell from watching the court today that the court is very familiar with the briefs, and so unless the court wants me to, I'm going to dispense with the usual kind of overview of our argument. There are two issues that I want to talk to the court about today. One is Toyota's Rule 28J letter. Toyota has submitted two unpublished district court decisions on Friday of last week, which it contends support its position. And we disagree that these two district court decisions have any bearing at all on this case, because in that, in those two cases, none of the arguments that are being made in this appeal were made, and therefore none of the arguments were decided by the district courts. In both of those cases, it appears neither party argued that 15 U.S.C. 2308 had any impact on California law. That obviously is a principal issue in this case. In both of those cases, no party even made the argument that a latent defect was sufficient under California law, as far as I can tell. Nothing about any of those cases had any finding by a finder of fact that a defect. Should I pause for a moment? Yes, because I don't have copies of the 28J letter, and so I don't even know what you're talking about. I don't feel badly. I don't either. And you're saying, okay, so you're saying there was a 28J letter filed and it's two unpublished memorandum dispositions. Is that what you're saying? Correct. So don't worry about it. Very well. They're not presidential. I certainly agree with that. All right. It also ---- Worry about this for me. All right. Can you cite to the record any specific evidence that was offered at trial that would allow the jury to conclude that the defect in this car arose either at the time of sale or within three months after the sale, and give me a page citation? I cannot ---- If you have one. I cannot give you a page citation. I can tell you that in our brief we gave a summary of the evidence. I think that the jury ---- But the summary of the evidence would have to necessarily rely on something that actually happened at the trial. Do you have in your summary some citation to the record? We have ---- One moment. What we have is a citation to the record in our brief, and I have my brief in front of us, discussing the facts that were introduced as evidence. There was introduced ---- and I don't think even the facts are disputed. The facts are the plaintiff bought the vehicle and ---- Now, try my question. Cite me something, if you have, that would allow a jury to infer or find that the defect was present at the time of sale or within three months after the sale. Well, at the excerpts of record 189.18, Mr. Rortega testified that he didn't do anything to the vehicle. That would allow a jury to infer that the defect existed at the time of sale because he didn't do anything out of the ordinary to it. There was also no evidence that the vehicle was in an accident. I believe, really, the issue here is a negative. There's no evidence that there was anything other than a defect that could have caused this. And so you're asking me to say, in a sense, it's the entire record. The entire record shows that this vehicle was not subject to anything other than ordinary use. And the very definition of a defect is a product that fails in ordinary use. In this case, it failed nine months later. The failure became evident nine months later. Do you have any evidence of a latent defect that did not manifest itself until nine months later, either by expert or lay opinion? The evidence is the failure nine months later. Had the vehicle not failed nine months later, there would be no evidence. But it did. I actually have the exact same question. It's Judge Zawahiri. And so I asked my law clerk to go through the record. And your expert testified that the engine, under normal circumstances, should not have blown even if Ortega had not changed the oil until after he had driven it for 7,900 miles, stating no car should have an engine fail in 7,000 miles. Certainly our expert said that. And I think that's something that we could all take the court could take judicial notice of that. Everyone knows. I don't know. Sorry. I don't know anything about cars. So don't tell me everyone knows. Just tell me what's in the record. I apologize. Yes, that is in the record. And that's certainly one of the points that supports the jury's inference. But it's not the only point. Well, what about, I guess I'm trying to struggle with this, because the jury instruction on merchantability, no one objected to it. And it said at the time of the sale that it was not fit for ordinary use. So the jury, we have to see if there's any rational basis for the jury having concluded that. And I guess that's the fundamental question. Is there any rational basis? I guess one of the basis, was there evidence that the engine had failed previously before it was sold to Mr. Ortega? No, there was no evidence in the record of the condition of the vehicle prior to the sale. So what evidence is there about the condition at the time of sale? The evidence was that the vehicle was purchased, that it was driven off the lot, and that it did not, that it was used normally for a period of 7,000 miles, nine months, and then it had a failure. Was there any testimony about the nature of this kind of failure, that it had to have been present at the time of sale? That wasn't really an issue in your case, was it? I don't know how to answer that question. I think that certainly the evidence allowed a jury to infer that when this vehicle left, it had some manner of defect in it, which progressed as time passed until the vehicle finally failed. It would be, I think, implausible to argue that this vehicle was 100% defect free until seven months later when all of a sudden it just changed and became non-defective. The inference that the jury is allowed to draw and that the jury did draw is that under ordinary normal use, which they found, they found ordinary normal use because if they hadn't, if they had found abuse, they would have ruled for Toyota. There was a jury instruction directly on point. The inference is that an automobile used properly and maintained properly will not have a major engine failure in 7,000 miles or nine months. I think that's borne out by the ordinary experience of jurors. It's something that I hesitate to say everyone knows because Judge Ward-Lott, you've already said no, but I think that ordinary common experience is that new vehicles should not fail and in the absence of a defect, do not fail in 7,000 miles in this way. And that's all that you needed to show. That is all that the plaintiff needed to show to prevail. That's correct. That the vehicle was either unfit for its, well, that's assuming that the standard is at the time of sale. Obviously, we don't contend that that's the standard that we had to show at all. Under the law, under the applicable law, the standard was did the vehicle have an unfitness for its ordinary purpose? Did it not pass without objection in the trade during the period of the express warranty? That, in our view, is the proper legal standard. It's the proper determination. And under that test, even Toyota admits that the plaintiff is entitled to judgment. The only point that Toyota made in its motion for judgment as a matter of law was that the implied warranty period was less than three years. That it was, in fact, only, I believe, three months. And I don't think that we even need to reach that issue because the jury found something else. And they never challenged that in the district court. There was no claim made in the district court by Toyota that the jury's verdict wasn't supported by the evidence. The claim was simply that this legal issue, which was irrelevant to the jury's consideration, should be resolved in their favor. It may not have been irrelevant, but it wasn't presented to the jury. The jury instructions did not go to the point. Correct. And that's what I mean. It was irrelevant to the jurors. The jurors were not back in the jury room saying, gosh, if it's only three months, the plaintiff loses. If it's three years, the plaintiff wins. They were in the jury room saying, based upon all the evidence that was presented at trial, Toyota's theory, the plaintiff's theory, the use of the vehicle, the history of failures after the initial failure, we believe. And by the way, that's another point that I want to make, is the time of the first failure, by itself, I don't know whether that would have been sufficient to convince the jury that the defect existed at the time of sale. But when you look at the repair history in total, you look at the vehicle coming back again and again and again, and the dealer's inability to find out what the root cause is. Because we know that they... Well, isn't it just as likely that the root cause occurred nine months later? No. And then the repeated failures afterwards? No. It isn't. It isn't likely, because there's no evidence that something changed in that vehicle nine months later. There's no evidence, and I think it's Toyota's burden at this point. How do we know that something didn't change in the first month, the second month, the ninth month? What do you point to that says it had to be when it was sold? Because when a thing is made, if it does not change, if there's no reason for it to change, then we can infer that it did not. If what you're asking me is, well, maybe something changed about this vehicle through normal use that caused it to fail, my answer to you is that whatever it is that made that change was a defect. Because an automobile, if made properly, should last for at least nine months and at least 7,000 miles. So if there was... Let's make a hypothetical. Let's say that the vehicle's getting in the normal heat ranges. It's warming up and it's cooling down and it's warming up and it's cooling down, and finally on the ninth month, some part shifts two millimeters to the left or to the right. All right? I would argue to you that the defect was in the composition of that material. It should not have shifted. So you're necessarily arguing that this verdict is supported by a latent defect? Yes. I am arguing that Toyota did not even raise this issue in the district court, and so they waived it. They did not argue... Which was addressed by the judge. No. They argued that the length of the implied warranty of merchantability was three months instead of three years. They did not argue. They made no argument that there was not sufficient evidence to support the verdict the jury actually reached, which was that the defect existed at the time of sale. They simply did not address that issue. They did not make that point. They did not make that argument to district court Judge Sabra? They did not. The argument they made is that it did not arise during the three-month period, but they did not address the fact that the jury found that it arised at the time of sale. We don't know what the jury found because they weren't given a question that said, when did this defect take place? No. What we know is that they answered a question, yes. And in order to answer that question, yes, they had to have found certain things. And one of them was that at the time of sale, the vehicle was either unfit for its ordinary purpose or it did not conform to the promises or affirmations of fact on the label or one of the other standards of the implied warranty merchantability. That we know. And again, going back to this issue, if in fact, as a matter of law, the period is three years, then even Toyota doesn't dispute that Plaintiff was entitled to judgment. But if it is a matter of law, it's three months, Toyota says it is entitled to judgment as a matter of law. It says that it is, but it made no argument in the district court as to why. Well, it did to the district judge who said, quote, Plaintiff does not dispute that he did not experience any defects during this warranty period, the three-month period, but asserts, quote, inside the quote, given the evidence, the jury was entitled to infer the vehicle was defective when it was sold. However, Plaintiff fails to cite any evidence to support that inference. And that's where the judge went wrong,  to disprove their motion for judgment as a matter of law. You had a burden to present a prima facie case that would allow your case to go to the jury, and the judge basically said, oops, shouldn't have gone. No, no. This was a motion for judgment as a matter of law after trial, when the Plaintiff had prevailed. There was a presumption that we won. It was Toyota's burden to disprove our case, and they did not do so. Toyota was asking the judge to disregard the findings of the jury. No, they raised the motion after the plaintiff's case, and the judge denied the motion, but said, you know, I'm not sure. Let's go, and if there's an adverse verdict, come back and talk to me, and I'll reconsider it. So they raised it at the stage where they were arguing you did not present a prima facie case. I agree. Renew the motion after the verdict. I agree, and there it would have been our burden to point the judge to evidence in the record to support the view that we could go forward. Absolutely. But once the jury found in our favor, I think the burden shifted to Toyota to prove that the judgment was worth the burden. What's your legal authority that the burden of proof shifts after the verdict? I'm unfamiliar with that, and maybe there is such authority. I'm unaware of any shifting. Your burden is to present the prima facie case. One moment. And what the district judge is saying, that the verdict is not supported by sufficient evidence. Let me investigate that issue while Defendant's Counsel is addressing it. May I address that in rebuttal? Sure. All right. I don't mean to monopolize. My colleagues may have questions. No, no. There's a standard. There's a standard for a judgment as a matter of law, and it's that judgment as a matter of law is proper if the evidence construed in the light most favorable to the non-moving party permits only one reasonable conclusion, and that conclusion is contrary to the jury's. So we have to construe the evidence in the light most favorable to Ortega and determine whether it permits only one reasonable conclusion contrary to that found by the jury. And that's our standard. And that is where I infer this burden, because Toyota is coming forward saying, this verdict is wrong. Well, that's why I'm asking you, let's construe this evidence in the light most favorable to Ortega, and what is it that supports a verdict? Really, actually, the problem with this case, the real problem is that the three-month limitation on the duration of the warranty was not part of the trial. The jury was not instructed on it. So I can't say that the jury, in fact, found that the defect was outside the time period, because it was never asked. I believe if you look at the instructions, what they were asked is did the defect occur at the time of sale. I believe that that is the only way they could have found in plaintiff's favor. By the way, I agree with the general proposition. I wish the instructions had included the duration. And, in fact, I believe we did submit instructions that included a durational element. The district judge, Judge Sabra, chose to use his own instructions. He, in fact, omitted several of the claims that were asserted in the complaint. And that's a level of frustration for me there. But what we do have for sure is a jury finding that at the time of sale, the vehicle was either unfit for its ordinary purposes or did not pass without objection in the trade under the contract description. What we also have is that Toyota admits that if the durational period is 36 months, that this vehicle met the standard. I don't think there's anyone that disputes that. The question of the first three months is obviously only one issue, but looking at the evidence in the light most favorable to the plaintiff, looking at the fact that it was sold as a new product, it was sold as a new vehicle, it was driven, it was not abused, it was driven as any other automobile should be driven. That's what the jury necessarily found when they ruled in the plaintiff's favor. And then it had a series of failures that the dealer could never remedy. The dealer was able to remedy the catastrophic nature of the failure, but never to stop whatever it was that was causing it to fail again. A reasonable inference that the jury could have drawn, and indeed did draw, is that the defect existed at the time of sale. Taking the evidence in the light most favorable to the plaintiff, as we must, that is a reasonable inference, because Toyota has not demonstrated any reason not to draw that inference. And again, this is where I get to its Toyota's burden. They're asking the district judge, and now in essence asking you, to say, look, there was simply no evidence to support this verdict. Well, there was. There was a reasonable inference, which the jury drew, which any reasonable person could draw. And in fact, we cite two cases where courts of appeal affirmed judgments in very similar situations. One of them, I think, was the, I won't say Noice, I don't know how to pronounce it, but the N-O-I-C-E case where it was in eight months, and I think there was another case called Vernon. So it's not unprecedented to make that inference. It's not unreasonable to make that inference. And I would go one step further. We're not just talking about any car. We're talking about Toyota. And setting aside some recent adverse publicity, Toyota's... No, they got some good publicity recently. Toyota is a quiet car. So you try to emulate it. I mean, you say your threshold of frustration, you reach it easily. You've got to think about raising that threshold. Because I'm trying to escape the high decibel level, and sometimes I can miss some of the golden statements that you're making. Toyota is well-known for making high-quality cars. There is no circumstance under which a Toyota should have a major engine failure after seven months. It just shouldn't happen. And if it does, it's reasonable to infer that it happened because they made the car wrong. They had a material failure somewhere. There's a part that's not in the parts that failed that is causing the failure. Obviously, we don't know what it is that caused the failure. But again, that's not our burden. We cite two cases in our reply brief that explain. It's not our burden to explain what's wrong with the car. And in fact, there's ample case law under California law, again, cited in our reply brief, that says that the jury may infer the existence of a defect from repeated failures. There's another case that I don't think we cited, Suman versus BMW of North America, where a vehicle was in repeat. No one's questioning the defect. Right. The issue is when. Well, and the issue is how. But we've belabored it, so I... How do you define a defect? Do you define a defect as the actual, the vehicle stops working? Or do you define a defect as the vehicle has a problem? It has something about it that is not right. Well, if you look at the warranty, it's a defect in materials or workmanship. It's not that it stops working. That's not the standard for a defect. The standard is... So what if this happened on the 35th month? All right. What if it happened on the 35th month? Same thing. I think we would need... I think I would want more facts. Did it happen on the 35th month and it was repaired and it never occurred again? Or did it happen on the 35th month and then continue again and again and again, as in this case? And in that case, did Toyota have evidence that perhaps there wasn't proper maintenance? Maybe it happened on the 35th month and the consumer never changed the oil in the entire period of auction. Under those circumstances, a jury might well say, you know what? You don't change the oil in the car. That's something that Toyota is not responsible for. Now, we've addressed this issue. I do want to ask, does the Court have any questions for me about the preemption issue, about the 2308, about the warranty extension? Because I think these obviously are very important issues to us. And if the Court has any questions, I want to answer them. I guess my question is, why are these two parties not selling this case and quibbling over $28,000 in the Federal Court of Appeals? Well, the answer to that question is I don't know, right? I mean, ultimately, the decision to settle, the decision to offer money comes from the defendant. I can tell you from my personal experience handling LeMoyne cases, the Japanese manufacturers have very large egos. They think that they make perfect cars. I've had cases where that was Toyota's argument. We make perfect cars. They're like American lawyers. Where's the car now? I believe it's still in San Diego. It's in the Plankist garage. So he doesn't drive it anymore? I don't know the answer to that. Huh? I don't know the answer to that. When was the last time you had visitation with a car? My office is in Orange County. I co-counseled this case  I personally have not seen one. Oh, okay. So we've got a lot of questions. We don't know whether he's driving it or not. We don't. What we can know is that had the district judge not granted the motion for judgment as a matter of law, he would not have the car. Toyota would have it if he would have received it. And why do we have jurisdiction over this? The complaint alleges claims under the Federal Magnuson Moss Warranty Act which creates federal subject matter jurisdiction. But if that's an issue you're going to visit, I would ask for leave to submit supplemental briefings. No, I'm just... I mean, there's so much adversity the amount of controversy isn't that high. You had more claims but went to trial only on the one claim. We went to trial on more than one claim. There were at least two claims that were tried. There was a breach of express warranty and a breach of implied warranty claim. Under state law? Yes. Yes. Well, what was the express... What was the breach of express warranty? Well, he brought it in and asked them to fix this engine failure and they repeatedly failed to fix it. And their express warranty... They, like all manufacturers, gave an express written warranty that said if there's a defect in materials and workmanship... And actually, I'm glad, Your Honor, you asked that question. Well, we'll fix it. We'll fix it. At no cost to you. Correct. And then they... Well, did they fix anything? They did. They repeatedly replaced major engine and transmission components. And by the way, this is more evidence that the defect existed at the time of sale because their express warranty only covers defects in materials and defects in workmanship. So, in order for it to be covered under their express warranty, in order for them to have had an obligation to fix it, they had to have found a defect in a material or in their factory workmanship. And they obviously did because they performed repairs under warranty. Did anybody test those parts that were removed? I have... There's no evidence in the record as to whether or not they were tested or not. Those parts were removed by a Toyota dealer. They were accessible to Toyota under their dealer agreement and certainly Toyota could have done that, could have submitted evidence that there was no material failure, there was no defect in workmanship. But the state of the record is that at least three times and possibly four, they actually performed repairs under the warranty and the warranty only covers defects in materials and workmanship which means the defect was there the day the car was sold. And so again, I say, looking at all the evidence, the jury could have reasonably concluded that this vehicle was defective at the time it was sold. Alright. Alright? Thank you very much Your Honor. It's afternoon now, Your Honors. I'm John Taylor. Don't tell us what the time is. Just go ahead. I'll get in trouble. Just to clear up the plaintiff didn't prevail on the express warranty claim because the dealership did fix the vehicle    been corrected. There was no express warranty claim that went to the jury. I show three questions to the jury and I have three questions to the jury. The first question is, I have three questions for the jury to answer. Two were implied warranties. One was repurchase or replace. They answered no to the two and yes to the implied warranty of merchantability. Your Honor, the repurchase replace that was an express warranty. Is an express warranty. Yeah. And they answered no to that. They answered no to that. Justice, one last question. How do we have jurisdiction under Section 1367C because there had been originally federal claims in this case the judge had made a mistake which he decided to do. Responding to some of the procedural things that have been said, I'd like to start out there. It's not correct that the three month issue was not in this case. It was in this case. Toyota made a 50A motion at the pleasure plaintiff's case to say no defect arose during the three month warranty period, implied warranty period. California law requires during that three month duration that the defect manifest itself or entitled to judgment. And the court said I don't really want to decide that effectively. I don't want to decide that issue in law right now. I'm going to let this go to the jury and then I'll revisit it afterwards. Why wasn't the jury asked the question why didn't Toyota submit an instruction on that? Do you find that the defect was present at the time of the sale? Do you find that? Or do you find that it arose if you find that it arose after the three month period then obviously they check the box if they roll in favor of Toyota. I mean that would be the easiest way to deal with this. That issue is not in the case, Your Honor, but it wasn't because we didn't have it in the case. It was because plaintiff injected it after the jury's verdict came back. What we said is California law and I know I'm just an ordinary person when it comes to cars. I have no specialized knowledge. I don't know that it's so unreasonable to infer from all of these incidences  and oil issues and engine going bad that it existed from the time that it left the Toyota workman. Let's visit that question, Your Honor, because plaintiff is relying on a case called Nexia that did not come out until after the jury's verdict. So this idea that you could rely on a latent defect that existed at the time of sale? I'm not sure it's a latent defect. I mean I'm not sure how you're defining latent. I mean if the car was when it was the day it was sold was destined to lose its engine within seven months which is an earlier time according to this evidence than any other car ever then it had to be defective at that point in time. Just because it didn't actually lose its engine until another point in time doesn't mean that it wasn't defective at the time it was sold. But you have to look at the legislative history for this version. It's section 1795.5 says there's a three month duration on implied warranties for used goods. Now if you look at the history of that legislation when that was being considered one of the dealership associations in California wrote to Senator Song and said we're worried about that provision because we think there ought to be a cutoff when these claims can be asserted and that duration language I'm not sure that gives us the cutoff. And Senator Song staff responded by explaining what that language is supposed to mean. Section 1795.5 are limitations on the time in which a latent defect may surface and create liability for the warrantor. After the expiration of these periods the warrantor is no longer responsible for those defects existing at the time of sale under the terms of the act. And that was the explanation that the defect has to manifest itself during that three month period or there's no claim for breach of the implied warranty. Even if the argument is as plaintiff has said it exists at the time of sale. It doesn't mean the plaintiff doesn't have a right of recovery. They can go under an express warranty in a three year period which they didn't get in this case. Now think of the implications of what plaintiff is saying under this implied warranty theory which is if something goes wrong while I own the car and all I have to do is come into court and say I never abused the car, I never did anything wrong to it, but now it's broken and therefore it must have been defective at the time that it was sold because that's the inference that's created. This court So what's wrong with that? Well in McClellan's case this court addressed that and said every manufactured item is defective at the time of sale in the sense that it won't last forever and you've got cases like from the second circuit in the Abraham case where the court said if we have a time limited warranty as express warranties and employee warranties are in California and we create a rule that says you can make a claim based on the warranty based on this latent defect idea that would render meaningless the time and mileage limitations and warranties. Just a quote here virtually this is from the Abraham case virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a latent defect that existed at the time of sale or during the term of the warranty and therefore the court said we're not going to let you circumvent time limited warranties by saying oh yes even though this defect didn't arise until after the warranty expired I think the thing must have been defective from day one else it wouldn't have gone wrong that eliminates warranty periods and since you don't create a rule if you don't acknowledge the legislative history that says this defect has to come out during that three month period basically you've created a situation where you have an unlimited warranty period so your position is we don't need to reach the issue of whether this is a latent defect  whether it's     you  have to  issue of whether this is a latent defect so you don't have to reach the issue of whether it's a latent defect coming up with this latent defect exception so to speak to 1795.5 the court just got it wrong and there hasn't been enough time in California for other appellate decisions to address that same issue because it's a fairly new case what about the Ohio case  fond of Ohio that's your opponent's site can you get around the Noisy case I can get around Noisy but it didn't ever address a statute like we have in California that has plain language in it the other thing I would point out and I know this court does not give great weight and maybe much precedence or value at all to these district court decisions but the California district courts have been confronted by this issue over and over and over again since Mexia and they have basically said Mexia is in their view not right on California law it's an outlier and in these class action decisions you know where you've got untimely claims being presented if you apply the Mexia rule you're going to never be able to get rid of these claims this case isn't a class action is it what's that this is not a class action but it comes up in class actions at the district court level because people always want to avoid the three month limitation or for new defective from day one under this latent defect theory and as far as I can tell every single California district court that's addressed that argument has said that can't be the law that can't be right it would eliminate this three month limitation in California law is there any evidence in the record that was presented to the jury that showed any type of maintenance on this vehicle from the time it was sold until the nine month event there were no records presented I think the plaintiff said on the stand that he thinks he changed the oil one time but he had no records to verify that and not produce in the trial well why would he change the oil because I think after what five thousand miles you go into Toyota and they give you the big service deal free that's a BMW I don't think Toyota does it too this wasn't a new car this was a used car so it's a different deal and we don't have anything in the record about the condition of the used car when it was purchased by the plaintiff other than it was a certified vehicle and done their regular routine certification but for this inference to arise is there a difference between the certification of a used car I mean why should you treat a used car different from the way you treat a new car I mean well I don't think that goes in there and aren't they told that that we're giving you this warranty and that it's like you're getting a new car the new used distinction makes a difference on how long the implied warranty period is if it had been a new car it would have been a year long here because it's used it's only a three month period that's what the legislature has said and as I said 1795.5 how many miles did it have on it about 10,000 I think 10,000 and so there was a car that was used it probably was only driven maybe two or three thousand a year not in this case this is a used car oh you mean they bought it from Toyota and it had 10,000 miles on it it was well it was still being covered by the new car warranty yes it was yeah but again the car was fixed under the new car warranty and the jury found there was no breach of that warranty right and your expert testified that it was Toyota's policy to make repairs under warranty unless it was very clear that the customer alone had caused the problem so so that implies that it wasn't Ortega who caused the problem Ortega alone well we don't know that the customer Ortega we don't know who caused what problem the thing was that the expert said he could not determine whether this car was defective at the time of sale or not and to do that he would have to examine the parts that were taken out of the car and he did not do such an examination so he could see that he couldn't say whether this vehicle was defective at the time it was sold and I think for the inference Mr. Anderson would like to apply here you'd have to have some way of showing that there as long as there's a rational basis from which the jury could infer that there was defect then you would uphold the jurors verdict but there wasn't such a basis because if you could infer a defect simply from the fact that the plaintiff says I owned the car I didn't do anything bad to it and therefore it must be defective from day one you don't have any warranty periods left at all because in every case someone can come forward and say I've owned this product for three years something failed in it therefore it must have been defective when I bought it well what about the testimony by both experts that this type of failure was extremely rare well I think that the answer is we don't know what caused this defect and there car failures can things can go wrong for any number of reasons and there was not testimony ruling out every single possible cause of this problem besides product defect there just wasn't a basis for the jury to infer that in the absence of such evidence ruling out  possible cause moreover it would shift the burden of proof to Toyota to prove that the car wasn't defective at the time of sale that would we did bring it up no on summary judgment on summary judgment because when a case actually goes to the jury and the jury is properly instructed it's a very high burden to get that jury verdict overturned very unusual very rare and and so at an earlier stage if this was the law that was gonna be applied to this you wouldn't you would make that motion real early your honor the point is that you shouldn't even get to this issue about what whether the jury can infer that there's a defect at the time of sale but that's the posture we're at after a jury trial that's where we are no because it's undisputed that this this defect did not manifest itself during the first three months their briefs on appeal admit that point well that's true that is the test why was there summary judgment no no no the test is whether maybe you have to change the definition of latent defect under california law the test for these implied warranties did this did this defect manifest itself during that three month warranty period if it didn't manifest itself even if it existed at the time of sale it's not a basis for an implied warranty right but you're not at that position now you're at a JMOL and we have to apply the standard of review for a JMOL but and the standard of review for a JMOL or JMOB is very similar to the standard of review for a summary judgment and the standard of review for the JMOL the record is different perhaps but the standards are the same here's the question the standard at the JMOL stage was did was there any evidence that this defect manifested itself during the three month period and the answer to that is absolutely there was none and even plaintiff doesn't contend that there's evidence that this defect manifested itself during that three month period no their position is it was latent and it was there but didn't manifest itself until sometime later that's the only way you can get around this three month rule is to claim that California recognizes some exceptions to that rule a latent defect exception in California law it does not I think Mexia is wrong on that I think you have the right under the K.F. Darry's case which we decided to look at what the California Supreme Court would do on that every other case that's looked at Mexia since it was decided has rejected its reasoning and said it is an outlier it is not consistent with California law and moreover the court in that case did not have the benefit of the legislative history materials which we gave this court to look at which clearly make it plainly clear that Senator Song who was the author of this legislation intended that three month period to be a cut off even if the defect existed at the time the vehicle was sold and that very letter that same letter has been cited by the California Supreme Court in the Gabaldon v. Diamond Chrysler case as evidencing the legislature's intent so Mr. Anderson has questioned that letter and said how do we know that really shows what the legislature intended well we know that because the California Supreme Court has said so in a prior decision and that is the touchstone for this court to decide whether that letter is relevant Can I ask you the question that my colleague asked opposing counsel and that is are you interested in a referral to mediation I don't think so your honor because I think this case is important on this issue of this latent defect theory and that's why both sides have pushed it to this level because we think that we're absolutely right on that issue and so we have NEXIA which is California Court of Appeals right and then we have district court cases from the federal courts that question NEXIA and you have the statutory language and you have a legislature dispute without statute with NEXIA do we have any other California state law case that we can follow no because NEXIA is too new for anyone to have said that's a crazy result there are no court of appeals decisions that have come down addressing the issue yet because it's too new this case only came up in the post-trial motion stage there was supplemental briefing on it because it was decided at that stage in the case and I urge you your honor but are we allowed not to apply controlling California authorities yes you are if you look at the K.F. Derry's case in fact Judge Pregerson was on the panel in that case there were two intermediate court of appeals decisions that seemed to be controlling and the Ninth Circuit said those two intermediate decisions are contrary to general principles of insurance law we don't think the California Supreme Court would follow those two cases and we're going to find it differently maybe we should certify to the California Supreme Court and let it tell us I think that's possible and it's that important of a legal issue because it's certainly not worth $28,000 for you guys to be arguing this all the way up to us I think that's we need to do that because if you look at as I said the plain language of this statute in question and the legislative history for it you'll see that California laws play on this and Mexico just missed some things I don't think the briefing was very good in that case from what you read and the opinion you can see the court had some severe criticisms you can't just criticize this court it's decision you can't say I don't think it was very good you have to give something else to follow What was that case that you just read? The K.F. Darry's case I can give you a side on that it's 224 F3 922 What was the case about? It was looking at a question of insurance law and I don't remember the exact issue but it looked  court cases It wasn't a product slide was it? No it wasn't but the general point made by the case is that it was a product slide This court's job is to figure out what the California Supreme Court would do not to look at intermediate court appeal decisions if this court believes they are in error and in conflict with other law and again I don't think the Mexican case What did we do there? How long was this? It's a 2000 year 2000 case 2000? 2000 I think about that case every day so Read me that quote again Alright let me see This court said I don't have a full court here but it basically said What quote is it? What I have the quote of is Who is the author? You were on the panel I don't know who the author is I don't have that You don't have a copy of the case? I don't have a copy of the case That's a defect in your report But the two court of appeal decisions were rejected here's the quote as quote in conflict with generally established principles of contract construction as articulated by the California Supreme Court So Has the California Supreme Court spoken on this? On 1795.5 no they have not but they have specifically approved this letter that Senator Sloan's staff wrote as evidencing the intent of that particular provision and that letter makes it clear that what the legislature intended was this was to be a three month period during which the defect had to manifest itself or it was not going to provide a basis for an implied warranty claim even if the defect had existed at the time that the product was the car vehicle had a breakdown right the problem has to come out yes a breakdown something to indicate that the flaw is there during that three month duration otherwise it's a cut off now that doesn't mean that it's inside the motor someplace and the quality of the steel or whatever it's made of didn't quite live up to specifications no one picked it up and that happens and and it starts to fatigue and then  finally manifests itself at the end of nine months because the motor breaks down you can't drive the car and the you know the argument would be well it had to be a defect and otherwise why would that happen and I mean it's supposed to take the motor apart and look at it yeah that's the exact scenario I think that was addressed in the Clemens case where I think that case if I'm remembering correctly involved you know the manifold on the engine and it was made of cast iron and eventually after the warranty period you know it failed and the claim was well the Senator Song said it had manifested itself will it maybe it was manifest if he took the engine apart but Clemens says you know the fact that there's a defect working there that's sometimes going to emerge after the warranty period doesn't make it a warranted claim and that's the same situation here everything's going to fail just because Song who was one of the sponsors wrote a letter that doesn't mean that that reflects the legislative intent he was the author of the letter the Supreme Court of California has looked at this very letter in another case and said this evidences the legislature's intent as long as we've gone this long on this let me just tell you I don't think that letter is as clear as applied to this case as I think it is and I'll let you I want to be fair and let you respond the letter says we recognize that a latent defect may appear only at a later date but it must tend to show that the defective condition existed at the time of sale and according to our understanding the courts have never viewed implied warranties as representing continuing obligations so a latent defect may show and in the next paragraph which paragraph were you looking at your honor I'm looking at it's page 2 it's talking about duration or enforcement of implied warranties and then there's are you looking at the letter from senator song or the letter to senator song letter to senator song okay I'm talking about the letter from him in response to the letter okay so then he says that letter also uses traceable to the time of defect so it's an evident thing right well that the dealerships were expressing concern about well plaintiffs might make these arguments and then we'll be on the hook for a long time and senator song is writing back saying don't worry about those arguments those aren't any good under this way we've written the statute because it's a three month limitation and it says after the expiration of these periods meaning the three month period the warrantor is no longer responsible for those defects existing at the that doesn't take away a remedy from the consumer in most instances because they still have their express warrant in place and that's what happened here they got a full repair of the vehicle it was completely fixed so where did the Supreme Court cite this letter as in the Gavaldon vs. Daimler Chrysler case and that case involves a question about service contracts and to give you the cite it's 32 Cal 4th 1246 I have that one I have that one in my book 1257 to 1258 then he says these are our initial feelings with respect to that initial feelings he later then wrote a letter to the governor when he urged him to sign the bill the exact same language was still in the statute and he said he pointed to that specific provision and he said this will allow manufacturers to cost their warranty expenses because they'll have a set period under which these problems have to emerge or there's no claim now if you have this late defect theory that creates basically indefinite liability for manufacturers on products because you can always come in a year, two, three, four years after the fact and say this product just manifested this defect just manifested itself but it must have been there at the beginning because I haven't done anything to cause it you know what you're saying makes a whole lot of sense it does I just don't know what we do about Nexia I think you say it's not right I think this has gone on quite a while and I don't want to try everyone's patience and I hesitate to do this but I'd like to follow my colleague's question to opposing counsel and ask you in a minute or less please why do we have jurisdiction again when there's a initially there's a federal claim in the case right and it's got to dismissed under section 1367c the trial judge had discretion to retain the case and try it right try just the state case okay is there a new judge judge I don't it's within the last isn't wasn't he appointed within the last not two years maybe five six years it's possible I don't know I'm sorry to say are there are there any questions on preemption that you'd like me to address yeah I mean you've done a really great job I mean this and and we appreciate the argument about counsel but I think we need to figure out what we're gonna do with it at this point so thank you okay do we have more for you may I have a minute or two for rebuttal 30 seconds alright defense counsel repeatedly told you that the test was did the defect manifest itself during the warranty period that's not the test those words do not appear in the statute anywhere if you read the statute the words in the statute make clear that manifestation isn't a relevant consideration at all it just isn't the definition well you're right that doesn't appear in the statute the definition of implied warranty by its nature includes defects that don't manifest themselves maxia is a new decision but it is not new law it recognizes that this was the law all along because it's the plain language of the statute and the Clemens case was an express warranty case in the Clemens case this court the ninth circuit said no legal defect for an express that's because of the language in the express warranty it promises to repair defects in materials and workmanship that manifest themselves during a certain period the implied warranty is a completely different animal it uses completely different language and finally I wanted to address one point which is the express warranty claim the express warranty claim that we tried and lost on required more than just proof of breach of an express warranty it required us to prove that a reasonable number of attempts were made and failed and that the manufacturer did not offer to repurchase it and so the jury's findings on that claim finding that we did not prevail do not necessarily mean the jury didn't find a breach of express warranty they may simply have concluded that we didn't make enough repair attempts or they may have concluded that Toyota did offer to repurchase the vehicle obviously we don't know what was going on in their heads but it does not follow the no answer does not follow the jury found no breach of the express warranty they could have just as easily have found something else and I just want to emphasize this point well was such an argument made like you know well if you don't find there's an express warranty that doesn't protect you it wasn't made no the argument that was made was that the defects were not sufficient to cause a buyback because they also have to substantially impair the use value and safety that cause of action has a lot of elements breach of the warranty is only one of them it is reasonable to assume that the jury rejected the claim because it found that there weren't a reasonable number of attempts or that the defects didn't substantially impair the use value or safety of the vehicle the one last thing I want to address is this argument that this creates an unlimited warranty if you accept our argument it creates an unlimited warranty and that is simply not true and that's because the manufacturer always has the ability and the expertise to come in and show what the cause of the defect was they could always come in and say look this part failed because of this cause and then the jury would have to weigh they would have to say do we believe the manufacturer's evidence that there's some other cause or do we believe the common sense rational inference that these types of things don't happen in the absence of a defect during the warranty period it is simply untrue to say that if you accept the inference that the warranty runs forever if you accept the inference what happens is the manufacturer has to come in and show no it was something else and remember they have the resources to do whatever they want to take the case to the jury and then say look this is why this part failed and it wasn't because of a defect they could have done it they could have done it very easily but they didn't instead they argued well it's not that big of a deal it doesn't substantially impair use safety we didn't have enough reasonable attempts now what I think what the council was worried about was that if people come in as you said two or three or four years later and say well if it hadn't been defect it wouldn't have broken down so that it was manifest manifested two years later and that would just put them at risk for long long periods of time but it wouldn't because it would be very easy for them to come back and say no I know but they're talking about litigation and attorneys fees and costs and all that I agree with that but again it's very easy for them to come back and rebut that inference all they have to do is submit evidence from their evidence yeah but look you said 30 seconds you know you gave me a warranty I've reached it you sure have can I address the senator song letter or am I on? are you going to give us the lyrics to it or what? no the letter from senator song the legislative history go ahead thank you very much your honor I appreciate it the letter from senator song was not approved by the california supreme court in a case called gavelman vs. diamond chrysler which uh opposing counsel and I both argued before the california supreme court the california supreme court did cite to that letter but not on this issue not on anything related to this issue it was a completely different issue it was an issue where the song beverly act had an ambiguity because we don't look to legislative history unless there's an ambiguity in the statute well you are you're giving us the same reason four times well here there is no ambiguity yeah ok that's that's all I wanted to say alright thank you so much your honor alright thanks for the work out we're uh we're going to recess until nine thirty tomorrow morning all rise court is adjourned until nine thirty tomorrow morning until nine thirty tomorrow morning  court is adjourned
judges: Zouhary, Pregerson, Wardlaw